# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
) **JUDGE RICHARD L. SPEER**
Paul Wadsworth )
) Case No. 07-32407
Debtor(s) )
)
)

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(3). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Granted.

## FACTS

On June 6, 2007, the Debtor, Paul J. Wadsworth (hereinafter referred to as the "Debtor"), filed a voluntary Chapter 7 bankruptcy petition for relief. At the time he filed for bankruptcy relief, the Debtor was divorced, and had two children, ages 11 and 9. The Debtor's bankruptcy schedules reflect secured debt in the amount of $342,639.00 and unsecured debt in the amount of $140,002.00. The Debtor set forth in his petition that these debts are primarily consumer debts.

The Debtor's main secured debt consists of two mortgages, which encumber his primary residence, having an aggregate value of $304,307.00. The Debtor, under the terms of a decree of divorce, is required to assume and hold his ex-wife harmless on these two mortgages. The value of this property, according to the Debtor's bankruptcy schedules, is $305,000.00. However, at the Hearing, the Debtor related to the Court that, based upon his past attempts to sell the property, this

**In re: Paul Wadsworth**
**Case No. 07-32407**

figure is probably overstated, and that the amount realized in any sale of the property would, in all likelihood, be less than $300,000.00.

The Debtor is employed as a senior nuclear specialist for a nuclear power plant; he has been with his employer for 19 years and currently earns approximately $7,900.00 per month in gross pay. Against this income, the Debtor listed in his bankruptcy schedules $4,963.83 in monthly payroll deductions, itemized as follows: $2,067.00 for payroll taxes and social security, $1,694.33 for child support, $641.33 for a 401(k) plan, and $561.17 for insurance. Based then on these deductions, the Debtor reported a net monthly income of $2,985.67.

On the expense side of the equation, the Debtor initially set forth $4,627.00 in monthly expenditures. However, the Debtor later revised this figure downward, to $4,089.00, based upon his surrender of a recreation boat. Based on this revision, the Debtor reported a net monthly shortfall in his household budget in the amount of $1,103.33. At the Hearing, testimony was given to the effect that the Debtor's girlfriend helped to offset this monetary shortfall.

The majority of the Debtor's expenses are devoted to servicing the debts secured against his residence and vehicle for which he intends to reaffirm. In terms of specific numbers, the figures submitted by the Debtor show that he allocates $498.00 per month to service the debt against his vehicle, a "2003 Ford F350 Super Duty Cab Long bed." This is exclusive of operational costs which total an additional $335.00 per month. To service the two mortgages encumbering his residence, the Debtor budgets $1,956.00 per month, with an additional $690.00 allocated for the property's utilities and maintenance.

Page 2

In re: Paul Wadsworth
Case No. 07-32407

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The United States Trustee (hereinafter "UST") brings its Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3). This provision provides:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
>> (A) whether the debtor filed the petition in bad faith; or
>>
>> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

As its introductory language imparts, § 707(b)(3) is a subordinate paragraph, utilized when determining whether a case should be dismissed under § 707(b)(1), the primary provision governing the dismissal of a case for abuse. In this way, § 707(b)(3) is but one of two subordinate paragraphs used to determine whether a case should be dismissed for abuse pursuant to § 707(b)(1). The other, contained in § 707(b)(2), sets forth a formulaic approach, known as the "means test," whereby a court is directed to presume that abuse exists if an ability-to-pay threshold is exceeded. 11 U.S.C. § 707(b)(2)(A).

Page 3

In re: Paul Wadsworth
Case No. 07-32407

In seeking to have the Debtor's case dismissed under § 707(b)(3), the UST cites to the 'totality of the circumstances' standard of subparagraph (B). In relying on this provision for the dismissal of the Debtor's case for abuse, the UST put forth this rationale: the "Debtor is eligible for relief under chapter 13 of Bankruptcy Code, has a stable source of income, repayment can be made to creditors without reducing necessary living expenses, and there are no known factors that mitigate against dismissal." (Doc. 23, ¶ 13).

When determining whether the dismissal of a Chapter 7 case is proper under the 'totality of the circumstances' standard of § 707(b)(3), a primary focus of the court will be on the debtor's 'need' for such relief. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989). Where there is a "want of need" dismissal for abuse will be proper. *Id.* A debtor's 'need' is broadly measured by looking to whether "his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." *Id.* An often used indicator in this regard is whether, as argued by the UST, a debtor has the ability to repay their debts, particularly whether the debtor has the ability to fund a Chapter 13 plan of reorganization. *Id.* Other related considerations may include whether the debtor enjoys a stable source of future income and whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities. *Id.* at 126-27.

As put forth by the UST, an examination of the Debtor's financial circumstances shows strong indicators of abuse for purposes of § 707(b)(3). Prominent in this regard is the Debtor's income. The Debtor, a senior nuclear specialist, has a gross monthly salary of approximately $8,000.00 per month, or $96,000.00 per year. Additionally, by all indications, the Debtor's income appears secure; the Debtor has been employed with the same company for 19 years.

Under any measure, a debtor, having a stable annual salary of almost $100,000.00, will be hard pressed to establish that they do not have the ability to pay some of their unsecured debt, such as through funding a Chapter 13 plan of reorganization. This is especially true since the

Page 4

**In re: Paul Wadsworth**
**Case No. 07-32407**

implementation of BAPCPA,[1] which makes the standard for dismissal less stringent; prior to BAPCPA, a case could only be dismissed for "substantial abuse," as opposed to now for simply "abuse." Congress also eliminated in BAPCPA what had otherwise been a safeguard for the debtor. Under the former § 707(b) there existed a presumption in favor of allowing the debtor's case to proceed. *In re Haar*, 360 B.R. 759, 760 (Bankr. N.D.Ohio 2007).

Equally problematic is the Debtor's intent to reaffirm on a significant amount of secured debt. Bankruptcy serves to maximize returns to unsecured creditors. Bankruptcy is also meant to provide a debtor a fresh-start, but not a head start. *Duffey v. Dollison*, 734 F.2d 265, 273 (6th Cir. 1984). Thus, when seeking bankruptcy relief, debtors may be expected to do some belt tightening, including, where necessary, foregoing the reaffirmation of those secured debts which are not reasonably necessary for the maintenance and support of the debtor and his family. *In re Krohn*, 886 F.2d at 128. This tightening of the financial belt, however, is not the picture presented by the Debtor.

Foremost, the Debtor intends to reaffirm on two mortgages, representing approximately $305,000.00 in secured debt, which encumber his residence. To service these mortgages, the Debtor allocates $1,956.00 per month. Additionally, to maintain his residence, the Debtor then subtracts from his monthly salary a further $690.00 to pay for the property's utilities and maintenance. The Debtor, thus, for shelter alone allocates $2,646.00, a substantial sum for any debtor who pleads an inability to pay their debts, but especially for this Debtor given his household situation. The Debtor is divorced, and although having two minor children, has no dependents living in his household. *See, e.g., In re Oot*, 368 B.R. 662, 670 (Bankr. N.D.Ohio 2007) (this Court held that a $4,200.00 per month allocation housing was an 'abuse' for purposes of § 707(b)(3)(B)).

---

[1] BAPCPA stands for the Congressional Act entitled Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Public Law 109-8, 119 Stat. 23.

Page 5

In re: Paul Wadsworth
Case No. 07-32407

Also troubling, the Debtor has indicated that he will reaffirm on $24,832.00 in debt secured against his vehicle. While debtors will, as a matter of course, be permitted reasonable expenses to maintain a vehicle, the Debtor in this matter seeks to retain a "2003 Ford F350 Super Duty Cab Long bed." (Doc. No. 1, Schedule D). Such a large vehicle, having no remunerative purpose, seems an unnecessary extravagance when it is considered that, inclusive of all costs, the Debtor presently allocates $833.00 per month to maintain this vehicle.

Also constituting an impermissible drain on his income, the Debtor allocates $641.33 per month toward a 401(k) account. On previous occasions, this Court has held that, unless presented with a unique situation, "it would be unfair to the creditors to allow [a debtor] to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." *In re Glenn*, 345 B.R. 831, 837 (Bankr. N.D.Ohio 2006), citing *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775 (6th Cir. 1995) and *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004). In this matter, however, the Debtor, beyond simply a desire to continue with his retirement contributions, gave no reason why his particular circumstance would warrant deviating from this rule. Also, the case cited by the Debtor, *In re Thompson*, 350 B.R. 770, 774 (Bankr. N.D.Ohio 2006), for the proposition that this rule regarding 401(k) accounts was abrogated by BAPCPA does not find support. Not only was the bankruptcy court's decision in *In re Thompson* based upon the application of a different Code provision, § 707(b)(2) as opposed to § 707(b)(3), but its holding, that the repayment of a 401(k) account was a special circumstances justifying an adjustment to the debtor's monthly income, was reversed on appeal to the district court, *In re Thompson*, 370 B.R. 762 (N.D.Ohio 2007).

For all these reasons then, a significant adjustment to the Debtor's permissible expenses becomes necessary. At the very least, the Debtor will not be permitted a 401(k) contribution in the amount of $641.33. The Debtor can also be expected to survive on a housing expense of $1,200.00, amounting to $1,446.00 less than his present housing expense of $2,646.00. Similarly, the Debtor

In re: Paul Wadsworth
Case No. 07-32407

can be expected to lower his transportation expense by at least $200.00 dollars per month. Therefore, insofar as it concerns an 'ability to pay' analysis under § 707(b)(3), the Debtor has overstated his monthly by at least $2,287.33.

Hence, instead of showing a shortfall of $1,103.33 per month, the Debtor's budget can be expected to show a surplus of $1,184.00. This is also a conservative estimate as it leaves the Debtor with a generous auto and housing allotment. For example, under the 'means test' calculation of §707(b)(2), the Debtor would be permitted total housing expenses of $1,169.00, not $1,200.00.[2] The estimate also does not take into consideration the financial resources provided by the Debtor's girlfriend which may, in appropriate circumstances, such as where the debtor and nondebtor live together and share expenses, be considered in an 'ability to pay' analysis. *In re Woods*, 309 B.R. 22, 31 (Bankr. W.D.Mo. 2004).

When put within the context of a Chapter 13 case, the existence of $1,184.00 in disposable income would afford the Debtor, based upon a 60-month plan, the ability to pay over $71,000.00, or approximately 50% of his unsecured debt. To be sure, and as the Debtor specifically pointed out, he may incur additional unsecured debt if he is forced to sell his home and/or automobile for less than the claims secured against these items of property. But for a person, such as the Debtor, with a substantial salary this hardly constitutes a reason not pursue a plan of reorganization. At the most, an increase in the Debtor's unsecured debt burden would only dilute the payout to his other unsecured creditors; it would not, however, eliminate it.

In this way, while the percentage of total indebtedness that may be repaid through a hypothetical Chapter 13 plan is relevant when determining whether abuse exists under § 707(b),

---

[2] http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm

Page 7

**In re: Paul Wadsworth**
**Case No. 07-32407**

there is no bright line test. In short, the potentiality of a low percentage Chapter 13 plan will not automatically insulate a debtor from a finding of abuse. *In re Glenn*, 345 B.R. 831, 838 (Bankr. N.D.Ohio 2006). To hold otherwise would reward those debtors who are less fiscally responsible, by making their case less like subject to dismissal, notwithstanding their accumulation of more debt. *Id.* As explained by another bankruptcy court:

> While it may be true that the higher the percentage of debt a Debtor could pay with future earnings, the more likely it is that a court would find substantial abuse, the converse is not true. Otherwise debtors would be rewarded for having more debt, rather than less. Instead of the percentage of debt, the determination of a debtor's ability to fund a Chapter 13 plan is based on a consideration of the debtor's ability to make a substantial effort in repaying his or her debts.

*In re Praleikas*, 248 B.R. 140, 145 (Bankr. W.D.Mo. 2000).

Similarly, the Court does not subscribe to the Debtor's position regarding his ex-wife. At the Hearing, the Debtor pointed out that he is obligated, under a decree of divorce, to hold his ex-wife harmless on the two mortgages encumbering his residence. And this circumstance, according to the Debtor, mitigates against any improper inference which may arise from his intention to reaffirm on these large debts.

To be sure, it can be agreed that financial obligations arising from a divorce are unique in character when compared to most other unsecured debts. Prominently, such debts are usually nondischargeable, thereby making the debtor legally liable for the full amount of the marital debt regardless of whether other creditors receive payment on their claims. 11 U.S.C. §§ 523(a)(5)/(15). But as with the previous issue, regarding the potentiality of a low percentage Chapter 13 plan, the Court is again at an impasse as to why the existence of a nondischargeable debt should mitigate against a finding of abuse. In fact, it would seem quite odd to allow a debtor to use what Congress

Page 8

In re: Paul Wadsworth
Case No. 07-32407

looked upon with disfavor – *i.e.*, the nondischargeability of certain categories of debts – as bearing favorably for the debtor in a 'totality of the circumstances' analysis under § 707(b)(3)(B).

It is recognized, as the Debtor also pointed out, that by not allowing this case to proceed under Chapter 7 of the Bankruptcy Code, the creditors holding the Debtor's mortgages may look to his ex-wife for the payment of these debts. However, this is a risk the Debtor's ex-wife assumed when she became liable for the mortgages. And under this type of circumstance, this Court has observed that it is not "this Court's function to extract parties . . . from the consequences of their actions." *Id*. Instead, this Court pointed out that it is under a duty to do, according to the provisions of the Bankruptcy Code, equal justice to all creditors, not just one. *In re Glenn*, 345 B.R. 831, 837 (Bankr. N.D.Ohio 2006).

Based then on the above discussion, it is the finding of this Court that, under the 'totality of the circumstances,' the filing of this case by the Debtor constituted an abuse for purposes of § 707(b)(3). Accordingly, unless the Debtor voluntarily converts this case, the Court is bound to promptly enter an order of dismissal pursuant to § 707(b)(1). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

In re: Paul Wadsworth
Case No. 07-32407

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on December 17, 2007, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

***IT IS FURTHER ORDERED*** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: December 7, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 10

# CERTIFICATE OF SERVICE

Copies were mailed this 7th day of December, 2007 to:

Paul J Wadsworth
2118 E. State St
Port Clinton, OH 43452

John A Brikmanis
139 E Water St
Oak Harbor, OH 43449

Derrick Rippy
201 Superior Ave, # 441
Cleveland, OH 44114

Douglas A Dymarkowski
4747 Holland-Sylvania Rd
Sylvania, OH 43560

                                                /s/Diana Hernandez
                                      Deputy Clerk, U.S. Bankruptcy Court